UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JL,<br><br>                           Plaintiff,<br><br>v.<br><br>LAURA WEBER, in her individual capacity; TAMMY ESSLINGER, in her individual capacity; ALVO GONZO in his individual capacity; LUIS ABANO, in his individual capacity; MICHAEL BODMAN, in his individual capacity; KEVIN GRANSE, in his individual capacity; CITY OF CARLSBAD, CALIFORNIA; COUNTY OF SAN DIEGO, CALIFORNIA (HHSA/CWS); JANE DOES #1-4, in her individual capacity,<br><br>                           Defendants. | Case No.: 17-cv-0006-CAB (WVG)<br><br>**ORDER ON DEFENDANTS' MOTIONS TO DISMISS**<br>**[Doc. Nos. 16, 21.]** |

      This matter comes before the Court on Defendants the City of Carlsbad, Michael Bodman and Kevin Granse's (collectively "Carlsbad Defendants") motion to dismiss [Doc No. 16], and on Defendant County of San Diego, Laura Weber, and Luis Abano's (collectively "County Defendants") motion to dismiss [Doc. No. 21]. The motions have

been fully briefed, and the Court finds them suitable for submission without oral arguments. For the following reasons, Carlsbad and County Defendants' motions are **GRANTED**.

I.   Background

Plaintiff JL, who proceeds *pro se,* filed this suit on January 3, 2017 alleging that Defendants violated his civil rights and committed a tort against him. [Doc. No. 1.] His factual allegations, accepted as true, are as follows.

In July 2015, Plaintiff's minor child ("A.L.") attended the Carlsbad Summer Camp at the Stagecoach Community Center & Park in the City of Carlsbad. [*Id.* at 20 ¶¶ 1-2, 4.[1]] One morning, before heading to Summer Camp, J.L. prepared A.L. a bowl of cereal for breakfast. [*Id.* at ¶ 4.] After A.L. complained that the cereal was soggy, Plaintiff prepared her a second bowl which A.L partially ate. [*Id.*] Plaintiff dropped A.L. off at camp, with A.L. pouting on the way and "having a moody morning." [*Id.*]

After being dropped off at camp A.L. reported the incident to an employee of the City of Carlsbad. [*Id.* at 21 ¶ 5.] Someone at the camp reported suspected child abuse. [*Id.*] The report was then relayed to the County of San Diego's Child Welfare Services Agency ("CWS"). [*Id.*]

Laura Weber, a CWS employee, contacted Plaintiff to discuss the incident. [*Id.* at 22 ¶ 6.] Not comfortable talking about the incident over the phone, Plaintiff arranged to meet Ms. Weber at her office to discuss several alleged items. [*Id.* at 23 ¶ 7.] Plaintiff denied the allegations, provided a pre-written verbal statement, and asked for the accuser's name and written statement of allegations. [*Id.*] Citing CWS policies, Ms. Weber refused to disclose the requested information. [*Id.*]

The next day, Plaintiff asked Defendants Bodman and Granse for any information on the allegations. [*Id.* ¶ 9.] They refused the request on the grounds that City of Carlsbad

---

[1] Document numbers and page references are to those assigned by CM/ECF for the docket entry.

and San Diego County CWS policies prevented them from furnishing this information. [*Id.*]

On August 18, 2015, Plaintiff received a letter from CWS indicating that the allegations were "unfounded." [*Id.* at 24 ¶ 10; *see also* Doc. No. 1 at 28, "Exhibit B".] Subsequently, Plaintiff contacted the Legal Services Unit who confirmed that the finding had been relayed to the Child Abuse Central Index ("CACI") and informed Plaintiff that there were no policies or procedures in place to remove the allegations about him. [*Id.*]

Plaintiff is concerned that this unfounded allegation could detrimentally effect his security clearance and future employment. [*Id.* ¶ 11.]

Plaintiff asserts claims against Defendants for violations of the Fourth, Sixth, and Fourteenth Amendments under 42 U.S.C. § 1983, non-compliance with California Penal Code 11169 "and other CPC and California Civil Code chapters," along with the tort of defamation.

On February 8, 2017, Carlsbad Defendants filed their motion seeking to dismiss under Federal Rule of Civil Procedure 12(b)(6) each and every claim brought against the City of Carlsbad and its employees, Michael Bodman and Kevin Granse. [Doc. No. 16.] On February 9, 2017, County Defendants filed a motion seeking to dismiss the claims brought against the County of San Diego and its employees, Laura Weber and Luis Abano. [Doc. No. 21.] Plaintiff filed his oppositions to the motions [Doc. Nos. 24, 27] and Defendants filed their replies. [Doc. Nos. 32, 34.]

**II.    Legal Standard**

Under Rule 12(b)(6), a party may bring a motion to dismiss based on the failure to state a claim upon which relief may be granted. A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.,* 519 F.3d 1025, 1031 (9th Cir. 2008).

Even under the liberal pleading standard of Rule 8(a)(2), which requires only that a party make "a short and plain statement of the claim showing that the pleader is entitled to relief," a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 555). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson,* 355 F.3d 1179, 1183 (9th Cir. 2004); *see also Starr v. Baca,* 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."). "Determining whether a complaint states a plausible claim for relief … [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679. Because JL proceeds *pro se*, the Court construes his filings liberally. *Hebbe v. Pliler,* 627 F.3d 338, 342 (9th Cir. 2010).

However, "[w]hile the court must construe *pro se* pleadings liberally and afford plaintiff the benefit of the doubt, even *pro se* plaintiffs must allege, with a least some degree of particularity, overt acts taken by each defendant which support his claim." *Rasidescu v. Midland Credit Mgmt., Inc.*, 435 F. Supp. 2d 1090, 1099 (S.D. Cal. 2006). A complaint that lacks "simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential elements of a complaint." *Bielma v. Bostic*, Case No.: 15cv1606-MMA (BLM), 2016 WL 29624, *8 (S.D. Cal. Jan. 4, 2016) (quoting *McHenry v. Renne*, 84 F.3d 1172, 1180 (9th Cir. 1996)).

**III. Discussion**

The Carlsbad Defendants and the County Defendants both move to dismiss Plaintiff's causes of action for failure to state a claim. Fed. R. Civ. P 12(b)(6). Their arguments for dismissal primarily concern the viability of Plaintiff's causes of action, with each moving to dismiss on the grounds that Plaintiff's allegations surrounding these claims are vague and conclusory. Further, Carlsbad Defendants assert that Plaintiff's defamation

claim fails because mandated reporters are immune from liability, Plaintiff has failed to comply with the California Government Claims Act, and that no facts support this claim against City of Carlsbad employees. Additionally, County Defendants seek to dismiss on the grounds that Plaintiff has failed to allege an injury in fact sufficient to establish Article III standing. Because the Defendants make related arguments in favor of dismissal, the Court will consider them together.

### A. Violation of Fourth Amendment Claim

The Fourth Amendment protects people against unreasonable searches and seizures. In count one of the complaint, Plaintiff alleges that Defendants conducted a search of A.L. in violation of her constitutional and civil rights. [Doc. No. 1 at 16-17 ¶ 3.] But, as the Carlsbad Defendants correctly point out, "Fourth Amendment rights are personal rights which . . . may not be vicariously asserted." *Alderman v. United States*, 394 U.S. 165, 174 (1969). "The general rule is that only the person whose Fourth Amendment rights were violated can sue to vindicate those rights." *Smith v. City of Fontana,* 818 F.2d 1411, 1417 (9th Cir. 1987). Thus, "a parent does not have standing to sue for an alleged violation of the Fourth Amendment on behalf of his minor child." *Anderson v. Dist. Attorney Office,* No. 11-CV-0572-IEG (MDD), 2011 WL 6013274, at *12 (S.D. Cal. Dec. 1, 2011); *see also Leubner v. Cnty. of San Joaquin,* No. 2:08-cv-0853 GEB JFM PS, 2009 WL 1212248, at *2 (E.D. Cal. May 5, 2009). As Plaintiff's Fourth Amendment claim as pled on behalf of his minor child is barred as a matter of law, the Court **GRANTS** Defendants' motions and **DISMISSES WITH PREJUDICE** Plaintiff's violation of the Fourth Amendment claim.[2]

---

[2] In his opposition papers Plaintiff asserts that he will be seeking leave to amend the complaint to add his minor child, A.L., as a plaintiff [Doc. No. 24 at 4-5] but such a request would be futile, unless Plaintiff engages representation for A.L., because Plaintiff cannot bring a claim on behalf of his child while acting in pro per. *See Johns v. Cnty. of San Diego*, 114 F.3d 874, 877 (9th Cir. 1997) (holding that a "guardian or parent cannot bring a lawsuit on behalf of a minor in federal court without retaining a lawyer.")

B.    **Violation of Sixth Amendment Claims**

The Sixth Amendment guarantees the rights of criminal defendants, including the right to know who his/her accusers are and the nature of the charges and evidence against them. In Count One and Count Two of the Complaint, Plaintiff asserts that his Sixth Amendment procedural due process rights were violated and that Defendants violated his Sixth Amendment substantive due process rights by failing to identify his accusers. [Doc. No. 1 at 6-7 ¶ 4.] Specifically, Plaintiff alleges that "[t]he 6th Amendment applies from the refusal of any Defendant to identify the accusers against the Plaintiff, despite a formal criminal investigation…" [*Id.* at 17:8-11.] Further, Plaintiff asserts that all of the Defendants "did not provide a mechanism (policy of procedure, or simply a straightforward statement) for the Plaintiff to know who was making the specific allegations and respond (in violation of substantive due process and the 6th Amendment)." [*Id.* at 17:24-18:6] (parentheses in original).

Because this is a civil matter, the Court agrees with Defendants that Plaintiff's claim based on a violation of Sixth Amendment is inapplicable. *See, e.g., Cole v. Arkansas*, 333 U.S. 196, 201(1948) ("No principal of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal.); *Gautt v. Lewis*, 489 F.3d 993, 1002 ("The Sixth Amendment guarantees a criminal defendant the fundamental right to be informed of the nature and cause of the charges made against him so as to permit adequate preparation of a defense."). Accordingly, the Court **GRANTS** both motions and **DISMISSES WITH PREJUDICE** Plaintiff's violation of the Sixth Amendment claim.

C.    **Violation of Fourteenth Amendment Due Process Claims**

The Fourteenth Amendment provides that no state can "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." Plaintiff brings suit for violation of his Fourteenth Amendment due process rights pursuant to 42 U.S.C § 1983.

While §1983 creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights it "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor,* 490 U.S. 386, 393-94 (1989) (internal quotation marks and citations omitted.); *see also Devereaux v. Abbey*, 263. F.3d 1070, 1074 (9th Cir. 2001).

In order "[t]o establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Place, Inc.,* 698 F.3d 1128, 1138 (9th Cir. 2012). *See also Ky. Dep't of Corr. v. Thompson,* 490 U.S. 454, 460 (1989) (courts "examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the state; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient."); *Portman v. Cnty. of Santa Clara,* 995 F.2d 898, 904 (9th Cir. 1993) ("A § 1983 claim based upon the deprivation of procedural due process thus has three elements: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (3) lack of process."). Here, Plaintiff has failed to meet the pleading standards to state a § 1983 claim.

### 1. Deprivation of a Constitutional Right

"The first inquiry in any § 1983 suit . . . is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" *Baker v. McCollan*, 443 U.S. 137, 140 (1979). Here, Plaintiff appears to claim his procedural due process Fourteenth Amendment rights were violated in three ways.

First, Plaintiff complains that his constitutionally protected liberty interest in making decisions about the care, custody and control of his child was violated when his minor child was interviewed without his presence. *See Miller v. California,* 355 F.3d 1172, 1175 (9th Cir. 2004) (there is "no question that parents have a constitutionally protected liberty interest in making decisions about the care, custody and control of their children."). Plaintiff does not allege who conducted the interview, when or where it was conducted, or

provide any specifics regarding the extent of the interview, whether it involved anything more than questions, etc.  Moreover, Plaintiff cites no authority that officials investigating suspected child abuse or neglect allegations are required to include the suspected parent in the interview to the minor.  The Court concludes that the Plaintiff has failed to plausibly allege that the interview of A.L. infringed on his protected right to make decisions about the care, custody and control of his minor daughter.

Second, Plaintiff complains that the City of Carlsbad and the County of San Diego CWS do not have a policy in place for determining whether abuse/neglect allegations warrant investigation, or provide Plaintiff with a mechanism for confronting and rebuffing such allegations before they can be propagated, i.e., reported to a criminal database.  The allegations of the complaint however are that a referral to CWS was investigated and Plaintiff was notified in writing that it was deemed unfounded and the investigation was closed.  He was also informed he could review a copy of the closed referral by contacting the Legal Services Unit of CWS.

CWS is required by law to investigate referrals of child abuse. See *Planned Parenthood Affiliates v. Van de Kamp,* 181 Cal. App. 3d 245, 259-260 (1986).  After a child protective agency receives a child abuse report it is then required to conduct an investigation. *Id*.  Plaintiff has failed to allege that the steps taken by CWS to perform a mandatory investigation of the referral it received regarding A.L., and subsequently issuing a written notice to him that the report was unfounded, violated any constitutional or statutory right.

Third, Plaintiff alleges that despite concluding the allegation was unfounded, he believes Defendants reported the investigation to CACI and the allegations have since been propagated across other criminal databases causing harm to his good name and reputation, and creating the potential for economic harm.   He alleges that Defendants have failed to create a procedural mechanism though which he can verify that this dissemination has not occurred or provide a procedure to remove false allegations and cleanse and restore his good name, thereby violating his due process rights.

It is not clear that Plaintiff is alleging that a false report is in fact resident on the CACI and other databases, or whether he finds himself unable to verify that no such report exists. Regardless, without more, an allegation of defamation via publication of an unfounded report on the CACI[3] without more, does not state a claim under 42 U.S.C. § 1983. This is because a person's reputation, standing alone, is not a liberty or property interest protected by due process. *See Paul v. Davis*, 424 U.S. 693, 712 (1976) ([P]etitioners' defamatory publications, however seriously they may have harmed respondent's reputation, did not deprive him of an 'liberty' or 'property' interests protected by the Due Process Clause."). To support a §1983 claim based on injury to reputation a plaintiff must allege "that the stigma was accompanied by some additional deprivation of liberty or property . . . protected by the state that directly affects the plaintiff's rights." *Miller*, 355 F.3d at 1178; *see also Sieger v. Gilley*, 500 U.S. 226, 234 (1991).

Here, Plaintiff simply makes general references to "defamatory allegations and information" and claims that "despite a finding of the allegations as unfounded, that the investigation was still reported and propagated across CACI and other criminal databases." [Doc No. 1 at 18:26-19:1.] But such general allegations are insufficient as they fail to identify and state the substance of the alleged defamatory statement.

As a result of the alleged publication, Plaintiff asserts that he "may be render[ed] . . . unemployable in multiple occupations where he holds" security clearances and that his

---

[3] The CACI was created as a result of the California Child Abuse and Neglect Reporting Act ("CANRA"). CAL. PENAL CODE §§ 11164 *et seq*. Under the Act, law enforcement and other child protective agencies are required to "forward child abuse reports (except unfounded reports) to the Department of Justice ("DOJ"), which then maintains an index of such reports." *Miller* 355 F.3d at 1176. *See also Los Angeles Cnty. v. Humphries*, 562 U.S. 29, 31 (2010) (citing §§ 11169(a), 11170(a)(3)). CANRA mandates that agencies "shall not forward a report to the California Department of Justice unless it has conducted an active investigation and determined that the report is substantiated." CAL. PENAL CODE § 11169(a). *See also Miller*, 355 F.3d at 1177. ("An agency may not forward such a report unless it has conducted an active investigation and determined that the report is not unfounded."). If a previously filed report is subsequently proved to be unfounded, the DOJ must be notified in writing of that fact and shall not retain the report. CAL. PENAL CODE § 11169(a).

damages are "prospective and based on potentially lost earnings." [Doc. No. 1 at 11-12 ¶ 3.] As County Defendants point out, possible future injury is not sufficient to establish an injury in fact. Aside from the prospective harm, Plaintiff has not alleged that he has been deprived of liberty or property. Accordingly, the Court concludes that has failed to allege that he suffered any loss of a recognizable property or liberty interest in connection with the reputational injury from having his name placed on the index sufficient to satisfy the "stigma-plus" test to state a defamation claim under § 1983.

Additionally, the Court finds Plaintiff's assertion that his rights have been violated because Defendants have failed to create a procedural mechanism through which to remove the allegation from the index misplaced. California Penal Code section 11169, subsection (d), explicitly provides a hearing procedure for individuals who wish to challenge their inclusion on the CACI. Moreover, it is the Department of Justice, not the City of Carlsbad or the County of San Diego CWS, which is the entity responsible for controlling entries and removal of reports from the CACI. *See Planned Parenthood*, 181 Cal. App. 3d at 259-260 ("The Department of Justice retains the records in a statewide index . . . which is to be continually updated and 'shall not contain any reports that are determined to be unfounded. If a child protective agency subsequently determines that a report is 'unfounded', it must so inform the Department of Justice who shall remove the report from its files.") (citations omitted).

### 2. Deprivation was Committed by a Person Acting under color of state law

A §1983 Plaintiff "must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal,* 556 U.S. at 676. *See also Jones v. Cmty. Redevelopment Agency of City of L.A.*, 733 F.2d 646, 649 (9th Cir. 1984) (even pro se plaintiffs must "allege with at least some degree of particularity over acts which defendants engaged in" in order to state a claim".)*; Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (citing *Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976)) (as a required element of a § 1983 claim "the inquiry into causation must be individualized and focus on

the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have cause a constitutional deprivation."); *Ellis v. Foulk,* No. 2:14-cv-00802 AC P, 2015 WL 4662766, at *7 (E.D. Cal. Aug. 5, 2015) ("vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient.").

Here, for each asserted violation, Plaintiff fails to identify the individuals acting on behalf of the City of Carlsbad or County of San Diego CWS whose conduct may have violated his constitutional rights. Rather, Plaintiff simply makes general references to "Defendants" without specifying who did what and when. Specifically, Plaintiff only identifies Laura Weber, an employee of CWS, as an individual with whom he discussed the child abuse allegations with but does not link her to any alleged constitutional violation. [Doc. No. 1 at 22-21 ¶¶ 6-8.] Similarly, Messrs Bodman and Granse are identified once in the complaint as City of Carlsbad individuals Plaintiff spoke with the day after meeting with Ms. Weber who "refused to discuss any aspects of the allegations or investigation…based on City of Carlsbad and San Diego County CWS policies." [*Id.* at 23:22-24:2, ¶ 9.] Likewise, Mr. Abano's name appears in only one paragraph of the complaint where Plaintiff alleges that "Mr. Abano's letter [] refuses to address verification and (if needed) cleansing of Plaintiff's record, to guard against defamation per se" but no other mention of him is made. [*Id.* at 24:5-8.] And while Ms. Esslinger's name appears on the cover of the complaint, no reference to her is made within it.

This absence of factual allegations in the complaint linking any specific individual to any of Plaintiff's claims regarding the purported constitutional violations means that Plaintiff has failed to allege with the requisite degree of particularity the acts which Defendants engaged in sufficient to state a claim.

### 3. Conclusion Regarding Fourteenth Amendment Claims

In sum, Plaintiff has failed to assert a constitutional or statutory violation and fails to link a named Defendant with some affirmative act or omission that demonstrates a violation of his federal rights or connect the City of Carlsbad or the County of San Diego

CWS to the execution of a policy or custom that violated his constitutional rights. Thus, the Court finds that Plaintiff fails to state §1983 claims upon which relief can be granted. Accordingly, the Court **GRANTS** both Defendants' motions and **DISMISSES WITHOUT PREJUDICE** Plaintiff's Fourteenth Amendment due process claims. If Plaintiff intends to amend his complaint to assert these claims, he is advised that he must allege a claim that comports with the aforementioned legal standard.

### D.  Count 2 – State Law Defamation Claim

Additionally, Plaintiff appears to makes a defamation per se claim pursuant to California Civil Code § 44 *et seq.* against all Defendants. [Doc. No. 1 at 17-19 ¶¶ 4, 6.] Carlsbad Defendants' motion to dismiss specifically addresses Plaintiff's state law defamation claim [Doc. No. 16-1 at 15-18.] whereas County Defendants' motion, aside from making general Article IIII standing arguments relevant to all claims, is silent.

Plaintiff alleges that A.L. communicated the soggy cereal incident to an employee of the City of Carlsbad summer camp. [*Id.* at 21 ¶ 5.] Subsequently, an unidentified individual at the camp "[w]ithout cause, required reporting, or exigent circumstances, someone at the camp negligently (and Plaintiff believes, maliciously) reported suspected child abuse as a result of 'soggy cereal,'" [*Id.* at 21:9-12] and the CWS opened an investigation. [*Id.* at 21]  Plaintiff alleges that the defamatory allegations have been disseminated through CACI and other databases. [*Id*. at 17-18, 24.]

Following the investigation CWS concluded that the allegations were unfounded. [*Id*. at 24 ¶ 10; *see also* Doc. No. 1 at 28.] In the August 14, 2015, letter informing Plaintiff of its findings, CWS also referred a phone call with Plaintiff that occurred on August 13, 2015, stating "I am unable to advise you about your question to expunge a CWS referral. You may want to speak to our Legal Services unit for more information or contact an attorney on this matter." [Doc. No. 1 at 28.] Plaintiff then contacted the Legal Services Unit and confirmed that a report of "unfounded" had, in fact, been relayed to CACI. [*Id.* at 24 ¶ 10.]  Thus, Plaintiff's complaint demonstrates that he had discovered the report containing the defamatory statements no later than August 14, 2015.

To constitute defamation a communication must be "unprivileged." CAL. CIV. CODE §§ 45, 46. Carlsbad Defendants assert that "the reporting person was a camp administrator," is therefore a mandated reporter under California Penal Code section 11165.7 (a)(6) or (a)(7), and thus immune from liability. [Doc. No. 16-1 at 16.] But, the Court is not convinced that the allegations surrounding the reporting warrant this conclusion. It is unclear from the Complaint who exactly reported the incident. The Complaint references "someone at the camp" reporting the suspected abuse but then refers to the "unnamed accuser" as "ostensibly an employee of the City of Carlsbad." [Doc. No. 1 at 21 ¶ 5.] In light of the confusing allegations regarding the unidentified reporter, the Court is unwilling to conclude that the unidentified reporter was a mandated reporter and therefore immune from liability.

Carlsbad Defendants' second argument for dismissal is, however, persuasive. The California Government Tort Claims Act ("TCA") provides procedural requirements that are prerequisites to litigation for claims of money or damages against a public entity or employee. CAL. GOV'T CODE §§ 905, 905.2, 945.4. Specifically, the TCA provides that "no suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented . . . until a written claim therefor has been presented to the public entity and has been acted upon . . . or . . . deemed to have been rejected. . . ." Id. § 945.4; *see also Karim-Panahi v. Los Angeles Police Dep't.*, 839 F.2d 621, 627 (9th Cir. 1988) (citing CAL. GOV'T CODE §§ 905, 945.4, 950.2).[4] The Act contains

---

[4] Under the Act, presentation of a claim for defamation must be made within six months after the accrual of the cause of action. "Generally, a cause of action of defamation accrues at the time the defamatory statement is 'published' that is "when the defendant communicates the defamatory statement to a person other that the person being defamed." *Presas v. Watchtower Bible and Tract Society of N.Y.*, No. 1:14-cv-01740-SKO, 2015 WL 672152, at *3 (E.D. Cal. Feb. 17, 2015) (quoting *Shively v. Bozanich*, 31 Cal. 4th 1230, 1247, (2003)). Here, Plaintiff was aware that the defamatory allegations had been made in in the summer of 2015, and began requesting the report/file associated with the allegations be expunged in August 2015. Thus, under the Act, Plaintiff had until March 2016 to file his claim to the public entities. If Plaintiff has not filed his claim he will have to seek leave to present a late claim. *See* CAL. GOV'T CODE § 911.4.

a similar provision for claims against public employees. *See* CAL. GOV'T CODE § 950.2. "Under these statutes, failure to timely present a claim for money or damages to a public entity bars a plaintiff from filing a lawsuit against that entity." *City of Stockton v. Superior Court*, 42 Cal. 4th 730, 738 (2007).

"Presentation of a timely tort claim is a jurisdictional perquisite to maintaining a cause of action against a public entity'' *Creighton v. City of Livingston*, 628 F. Supp. 2d 1199, 1224-24 (E.D. Cal. 2009). Unless a plaintiff has complied with the requirements of the TCA before commencing a civil action, his supplemental state law claims against a California public agency are barred. *Id.* at 1225. Therefore within the complaint, plaintiff must allege compliance with the Act's claim presentation requirement. *See, e.g., Dowell v. Contra Costa Cnty.,* 928 F. Supp. 2 1137, 1151 (N.D. Cal. 2013) ("The requirement that a plaintiff must affirmatively allege compliance with the TCA applies in federal court.") (citation omitted); *Turner v. Tierney,* No. C 12-6231 MMC, 2013 WL1003634, *3 (N.D. Cal. Mar. 13, 2013) ("Compliance with the claim presentation requirement must be pled in the complaint."); *Creighton,* 628 F. Supp. 2d at 1225 ("In the complaint, the plaintiff allege facts demonstrating or excusing compliance with the claim presentation requirement. Otherwise his complaint . . . fails to state facts sufficient to constitute a cause of action.") (internal quotations and citations omitted.)

Here, as Plaintiff's state law claim for defamation is not exempted from the TCA, his state law claim is subject to his compliance with the Act. But, Plaintiff has not alleged compliance with the claim procedures of the TCA. Accordingly, his State law defamation claim against the Defendants is **DISMISSED WITHOUT PREJUDICE.** If Plaintiff chooses to amend his Complaint, he must allege facts that he has satisfied the Act's

---

Relatedly, as currently pled, Plaintiff's state law defamation claim raises statute of limitations concerns. In California, claims for defamation must be made one year from the date the defamatory statement was published. CAL. CIV. PROC. CODE §340(c). As alleged in the complaint, Plaintiff was aware that the defamatory allegations had been made in in the summer of 2015, and began requesting the report/file associated with the allegations be expunged in August 2015. Thus it would appear that the limitations period expired no later than August 14, 2016.

requirements. If Plaintiff is unable to allege that he's satisfied the TCA's requirements he may seek leave to refile his defamation claim after exhausting the remedies available to him under it.

## IV. Conclusion

Both Carlsbad Defendants [Doc. No. 16] and County Defendants' [Doc. No. 21] motions to dismiss are **GRANTED.**

Plaintiff may file an amended complaint **no later than March 24, 2017**.[5] Plaintiff must identify all claims he asserts against Defendants and clearly set forth the necessary factual allegations to support the elements of each claim. Plaintiff's amended complaint must be a stand-alone document, "complete in itself without reference to the superseded [complaint]." CivLR 15.1(a).[6]

**IT IS SO ORDERED**.

Dated: March 10, 2017

Hon. Cathy Ann Bencivengo
United States District Judge

---

[5] If Plaintiff chooses to amend his complaint he must serve each and every defendant or their counsel with a copy of the first amended complaint as the original complaint [Doc. No. 1] is dismissed in its entirety as to all defendants.

[6] *See also Rhodes v. Robinson*, 621 F.3d 1002, 1005 (9th Cir. 2010) ("As a general rule, when a plaintiff files an amended complaint, the amended complaint supercedes the original, the latter being treated thereafter as non-existent.").