UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JL,<br><br>         Plaintiff,<br><br>v.<br><br>LAURA WEBER, in her individual capacity; TAMMY ESSLINGER, in her individual capacity; ALVO GONZO in his individual capacity; LUIS ABANO, in his individual capacity; MICHAEL BODMAN, in his individual capacity; KEVIN GRANSE, in his individual capacity; CITY OF CARLSBAD, CALIFORNIA; COUNTY OF SAN DIEGO, CALIFORNIA (HHSA/CWS); JANE DOES #1-4, in her individual capacity,<br><br>         Defendants. | Case No.: 17-cv-0006-CAB (WVG)<br><br>**ORDER ON DEFENDANTS' MOTIONS TO DISMISS**<br>**[Doc. Nos. 62, 63.]** |

This matter comes before the Court on Defendants the City of Carlsbad, Michael Bodman and Kevin Granse's (collectively "Carlsbad Defendants") motion to dismiss Plaintiff's second amended complaint [Doc No. 62], and on Defendants County of San Diego, Laura Weber, and Luis Abano, Tammy Esslinger and Alvo Gonzo's (collectively

"County Defendants") motion to dismiss Plaintiff's second amended complaint [Doc. No. 63]. The motions have been fully briefed, and the Court finds them suitable for submission without oral arguments. For the following reasons, Carlsbad and County Defendants' motions are **GRANTED**.

I. Background

Plaintiff JL, who proceeds *pro se,* filed his original suit on January 3, 2017. [Doc. No. 1.] The Carlsbad Defendants and the County Defendants each filed motions to dismiss [Doc. Nos. 16, 21] which the Court granted with leave to amend [Doc. No. 35].

On March 24, 2017, Plaintiff filed the First Amended Complaint ("FAC"). [Doc. No. 40.] Both the Carlsbad and County Defendants filed motions to dismiss the FAC [Doc. Nos. 41, 43] which were granted by the Court with leave to amend [Doc. No. 58].

On July 25, 2017, Plaintiff filed the Second Amended Complaint (SAC). [Doc. No.61.] His factual allegations, accepted as true, are as follows.

In July 2015, Defendant Bodman, acting in his individual capacity as a Carlsbad employee and as Supervisor in Camps and Activities, and Defendant Granse, acting in his individual capacity as a Carlsbad employee and Recreation Area Manager "segregated Plaintiff's MC [minor child] under color of law, and participated via questions and directing the isolating environment for the MC (and not allowing the MC to leave for 20-30 minutes), in violation of normal discussions of well-being." [*Id.* at 4.][1]

At some unidentified point, mandatory reporters Bodman and Granse filed a child abuse allegation with the County of San Diego's Child Welfare Services Agency ("CWS"). [*Id.* at 8-9.] The report was made with "zero evidence" and "with reckless disregard of the truth or falsity of the report with deliberate indifference and recklessness of a known falsehood" before taking reasonable steps to verify the plausibility of the report. [*Id.* at 7-8.]

---

[1] Document numbers and page references are to those assigned by CM/ECF for the docket entry.

Following the submission of the report to CWS but before the allegation of abuse was investigated, Defendant Weber, a CWS case worker, entered it into the Child Abuse Central Index ("CACI"). [*Id.* at 13-14.] After the report was entered into the CACI, Weber telephoned Plaintiff to discuss the abuse allegations. [*Id.*] Defendant Esslinger, a CWS case worker, interacted with Plaintiff in-person and entered additional information and notes into the CACI report. [*Id.* at 14-15.] Defendant Esslinger did not escalate the report to either of her managers, Defendants Abano and Gonzo. [*Id.* at 15.]

Defendants Gonzo and Abano, CWS case worker managers, were responsible for reviewing and approving the work performed by Esslinger and Weber. [*Id.* at 15-16.] Part of their duties include reading and approving Esslinger and Weber's case notes and approving the entry of reports into CACI. [*Id.* at 15-16.] Gonzo and Abano interacted with Esslinger and Weber almost daily but did not "dissuade or caution them as to the veracity of information they were publishing about Plaintiff." [*Id.* at 16-17.]

On four separate occasions in July 2017, Plaintiff attempted to file a police report alleging criminal conduct on the part of Bodman and Granse "as a result of their actions as Carlsbad City employees for filing a child abuse allegation against Plaintiff" that was later determined to be unfounded. [*Id.* at 26.] Two City of Carlsbad police officers, Beason and Jakowski, refused to allow Plaintiff to file the report or to relay Plaintiff's allegations to the County District Attorney, claiming they had a policy and practice against "filing a criminal complaint" against mandatory reporters alleging violations of CPC 11172(a). [*Id.* at 26-27.] On July 18, 2017 Officer Beason contacted City of Carlsbad, City Attorney Walter Chung, to discuss whether Plaintiff's complaint should be filed. [*Id.* at 27.] On July 19th and 20th, Mr. Chung contacted Plaintiff and "recused himself from guidance to the City Police, but stated that the police should follow their own judgment and policies in deciding whether to file a criminal complaint based on Plaintiff's evidence and witness statements." [*Id.* at 27.]

Plaintiff is concerned that this unfounded allegation could detrimentally effect his security clearance, future employment and FAA pilot's license. [*Id.* at 17-18.]

Further, the factual allegations section of the SAC states:

> 1. No admissible evidence of any child abuse allegation exists against the Plaintiff.
> 2. Evidence from the minor child in question confirms that she never claimed, admitted, evinced or appeared to be abused, or agreed to any allegations of abuse of any sort by anybody, particularly not from her Plaintiff parent.

[Doc. No. 61 at 28.]

Plaintiff asserts claims against Defendants for violation of the Fourteenth Amendment under 42 U.S.C. § 1983. On August 8, 2017, Carlsbad Defendants filed their motion seeking to dismiss under Federal Rule of Civil Procedure 12(b)(6). [Doc. No. 62.] On August 8, 2017, County Defendants also filed a motion to dismiss. [Doc. No. 63.] Plaintiff filed his oppositions to the motions [Doc. Nos. 64, 65.] and Defendants filed their replies [Doc. Nos. 66, 67].

## II. Legal Standard

The same legal standards apply to the Second Amended Complaint as to those explained in the Court's earlier orders of dismissal. For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.,* 519 F.3d 1025, 1031 (9th Cir. 2008). However, "[a]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca,* 652 F.3d 1202, 1216 (9th Cir. 2011). Even though JL proceeds *pro se* he must still allege "with a least some degree of particularity, overt acts taken by each defendant which support his claim." *Rasidescu v. Midland Credit Mgmt., Inc.*, 435 F. Supp. 2d 1090, 1099 (S.D. Cal. 2006). A complaint that lacks "simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential elements of a complaint." *Bielma v. Bostic*,

Case No.: 15cv1606-MMA (BLM), 2016 WL 29624, *8 (S.D. Cal. Jan. 4, 2016) (quoting *McHenry v. Renne*, 84 F.3d 1172, 1180 (9th Cir. 1996)).

### III. Discussion

The Carlsbad Defendants and the County Defendants both move to dismiss Plaintiff's causes of action for failure to state a claim. Fed. R. Civ. P 12(b)(6). Their arguments for dismissal primarily concern the viability of Plaintiff's claims that his 14th Amendment rights have been violated. The Carlsbad Defendants assert that Counts 1 and 2 against the individual Defendants, Bodman and Granse, must be dismissed because: (1) the SAC contains no facts to support the claims; and (2) Bodman and Granse are entitled to qualified immunity. Additionally, Carlsbad Defendants seek to dismiss the *Monell* claim (count 5) against it because there is no constitutional right to a police report and also assert that Plaintiff has failed to allege facts to support this claim. County Defendants seek dismissal of the two counts (counts 3 and 4) against them on the grounds that the SAC does not plausibly suggest that County Defendants violated Plaintiff's due process rights or had an unconstitutional policy in place. In support of their motion for dismissal, County Defendants assert that Plaintiff has failed to allege an injury in fact sufficient to establish Article III standing. Because the Defendants make related arguments in favor of dismissal the Court will consider them together.

The Fourteenth Amendment provides that no state can "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." Plaintiff brings suit for violation of his Fourteenth Amendment due process rights pursuant to 42 U.S.C § 1983.

In order "[t]o establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Place, Inc.,* 698 F.3d 1128, 1138 (9th Cir. 2012). *See also Ky. Dep't of Corr. v. Thompson,* 490 U.S. 454, 460 (1989) (courts "examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered

with by the state; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient."). For Plaintiff to successfully allege *Monell* claims against the municipalities, he must show: "(1) that he was deprived of a constitutional right, (2) the city had a policy, practice, or custom that amounted to "deliberate indifference" to the constitutional right, and (3) that the policy was the "moving force" behind the constitutional violation." *Levine v. City of Alameda*, 525 F.3d 903, 907 (9th Cir. 2008) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-691(1978) and *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996)). "The first inquiry in any § 1983 suit . . . is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws." *Baker v. McCollan*, 443 U.S. 137, 140 (1979).

First, Plaintiff complains that his constitutionally protected liberty interest in making decisions about the care, custody and control of his child was violated when his minor child was interviewed without his presence. *See Miller v. California,* 355 F.3d 1172, 1175 (9th Cir. 2004) (there is "no question that parents have a constitutionally protected liberty interest in making decisions about the care, custody and control of their children."). Plaintiff states that Defendants Bodman and Granse "segregated" his minor child and "participated via questions and directing the isolating environment for the MC (and not allowing the MC to leave for 20-30 minutes), in violation of normal discussions of well-being, and in doing so violated Plaintiff's 14th Amendment liberty and privacy interest for his MC." [Doc. No. 61 at 4-5.] Further, Plaintiff summarily claims that Bodman and Granse "did not have any evidence, claim, anonymous tip, or any reason to intrude on the privacy interests of Plaintiff's MC." [*Id*.] As in his earlier complaints, Plaintiff does not allege who conducted the interview, when or where it was conducted, or provide any specifics regarding the extent of the interview, whether it involved anything more than questions, etc., other than it lasted 20-30 minutes. From the SAC it appears that the interview involved nothing other than questions to M.C, it has not been alleged that a physical search of MC or medical examination of her was conducted.

This Court is unaware of any authority that requires officials investigating suspected child abuse or neglect allegations to include the suspected parent in the interview of the minor or necessitates the issuance of a search warrant before an interview of the minor can be conducted. *See, e.g., Devereaux v. Abbey*, 263 F.3d 1070, (9th Cir. 2001) ("there is no constitutional due process right to have child witnesses in a child sexual abuse investigation interviewed in a particular manner, or to have the investigation carried out in a particular way. . . . Consequently, mere allegations that defendants used interviewing techniques that were in some sense improper, or that violated state regulations, without more, cannot serve as the basis for a claim under § 1983."). Further, Plaintiff's statement that "without probable cause or exigent circumstances" such interviews "require notice and consent" does not save this claim from dismissal. [Doc. No. 61 at 5.] *See Phillips v. Cnty. of Orange*, 894 F. Supp. 2d 345, 376 (S.D.N.Y. 2012) (an interview of a minor conducted after receiving information about possible abuse, that was limited in nature to just questions, did not infringe on parents' "right to the care, custody, and management of [the minor child]"). Therefore, the Court concludes that the Plaintiff has failed to plausibly allege that the 20-30 minute interview of his minor child infringed on his protected right to make decisions about the care, custody and control of his minor child.

Second, Plaintiff complains that the Carlsbad Defendants deprived him of his right to privacy by creating and/or relaying a false report of suspected child abuse to San Diego CWS. The fact that Messrs. Bodman and Granse are mandatory reporters under California Penal Code section 11165.7(6)[2] is undisputed. As such, these individual Defendants are required under the Child Abuse and Neglect Reporting Act ("CANRA") to report suspected child abuse whenever they have "knowledge of or observes a child whom the mandated reporter knows or reasonably suspects has been the victim of child abuse or neglect." Cal.

---

[2] Pursuant to California Penal Code section 11165.7(a)(2), individual city employees who are administrators of a public or private day camp are considered mandated reporters.

Penal Code § 11166(a).³ But, as the Court noted in its earlier orders, CANRA does not require mandated reporters to conduct an investigation of suspected child abuse to determine the veracity of the allegations before notifying the CWS about suspected child abuse. Furthermore, as mandated reporters Defendants would be immune from liability for reporting a known or suspected instance of child abuse or neglect unless it could be "proven that a false report was made with reckless disregard for the truth or falsity of the report." *Id.* at section 11172(a).

In what appears to be an attempt to head off Defendants' qualified immunity defense and to fix the deficiencies of the earlier complaints Plaintiff now asserts that Bodman and Granse filed the report:

> with reckless disregard of the truth of falsity of the report with deliberate indifference and recklessness of a known falsehood, by disregarding exonerating and exculpatory evidence and statements of the alleged victim (Plaintiff's MC), and with no probable cause, anonymous tip, or any reason to reasonably suspect any type of child abuse, and not taking reasonable pre-deprivation steps to verify the plausibility of whatever sick or random or unfounded report [they] decided to file to potentially meet [their] quota for child abuse allegations to support a budget increase due to a perceived higher workload.
> .

[Doc. No. 61 at 7-8.]

But these statements are conclusory and simply recite the reporting limitation of CPC 11172(a) and are not supported by the facts or plead with any degree of particularity. Except for the conclusory allegations that the report contained known falsehoods, Plaintiff has again not furnished the Court with any information regarding the contents of the report that Carlsbad Defendants created and forwarded to CWS. There are no facts to suggest that Bodman or Granse deliberately or intentionally filed false child abuse allegations to

---

³ Reasonable suspicion means "that it is objectively reasonable for a person to entertain a suspicion, based upon facts that could cause a reasonable person in a like position, drawing, when appropriate, on his or her training and experience, to suspect child abuse or neglect … any "reasonable suspicion" is sufficient." Cal. Penal Code § 11166(a)(1)

cause Plaintiff harm, no allegations regarding what false statements were included in the report, and no facts pertaining to what information was gleaned from the interview with MC and what was subsequently reported to CWS. Rather, Plaintiff makes conclusory allegations that the report contained known falsehoods and continually references to the testimony of MC and states he is relying on the "direct-witness testimony by the MC reported by Plaintiff impeaches any claims by Defendants to the contrary." [Doc. No. 61 at 10.] But, such general statements of reliance do not relieve Plaintiff of his burden to allege "with a least some degree of particularity, overt acts taken by each defendant which support his claim." *Rasidescu* 435 F. Supp. 2d at 1099. Without more, these allegations are insufficient to assert a constitutional or statutory violation. Therefore, the Court concludes Plaintiff has failed to plausibly allege how Bodman and Granse violated his 14th Amendment right by creating and relaying a report of suspected child abuse to CWS.[4]

Third, Plaintiff complains that the County of San Diego CWS and all four of its employees, Defendants Weber, Esslinger, Gonzo, and Abano, distributed "false allegation data referencing Plaintiff to multiple sources" before conducting an investigation. [Doc. No. 61 at 12.] Plaintiff alleges that he is not objecting to the investigation performed by CWS, rather he is taking issue with the "stigma-plus harm spread by CWS despite the allegations later proven by CWS to be false [], and spread despite CWS knowing that in >92% of reports, the allegations will be false [] which shows CWS' harm to be a matter of policy and practice." [*Id*. at 13.] Further, Plaintiff asserts that because the later unfounded report was entered into the CACI[5] it "likely spread to connected databases through

---

[4] In so finding, the Court declines to address the Carlsbad Defendants' claim of qualified immunity. Absent a plausible claim, a determination regarding the applicability of the doctrine would be premature.
[5] The CACI was created as a result of CANRA. CAL. PENAL CODE §§ 11164 et seq. Under the Act, law enforcement and other child protective agencies are required to "forward child abuse reports (except unfounded reports) to the Department of Justice ("DOJ"), which then maintains an index of such reports." Miller 355 F.3d at 1176. CANRA mandates that agencies "shall not forward a report to the California Department of Justice unless it has conducted an active investigation and determined that the report is substantiated*."* CAL. PENAL CODE § 11169(a). *See also Miller*, 355 F.3d at 1177. ("An agency may not forward such a report unless it has conducted an active investigation and determined that the report is not

automated processes likely to include DOJ, FBI, DHS, DOD, and other agencies or IT partners, then Plaintiff alleges a pre-deprivation 14th Amendment claim available for remedy." [*Id.*] Additionally, Plaintiff states that he has read on notice boards that other pilots have had their licenses revoked because of child abuse investigations. [*Id.* at 18.] Thus, Plaintiff concludes that the posting of the report in the CACI resulted in the "altered status of Plaintiff's FAA certificate and security clearances" because the connected databases are used by the FAA and DoD in determining good moral character, and the report of child abuse investigation "may" result in the revocation of his license or clearance. [*Id.*]

However, the Court reiterates that an allegation of defamation via publication of an unfounded report on the CACI without more, does not state a claim under 42 U.S.C. § 1983. This is because a person's reputation, standing alone, is not a liberty or property interest protected by due process. *See Paul v. Davis*, 424 U.S. 693, 712 (1976) ([P]etitioners' defamatory publications, however seriously they may have harmed respondent's reputation, did not deprive him of an 'liberty' or 'property' interests protected by the Due Process Clause."). To support a §1983 claim based on injury to reputation a plaintiff must allege "that the stigma was accompanied by some additional deprivation of liberty or property . . . protected by the state that directly affects the plaintiff's rights." *Miller*, 355 F.3d at 1178; *see also Sieger v. Gilley*, 500 U.S. 226, 234 (1991). Here, Plaintiff has not alleged that his security clearance has been denied or that his FAA pilot's license has been revoked, he simply alleges that it may happen in the future while summarily stating that his clearances and licenses have been "altered." As such, his claim alleges only prospective harm, which is insufficient to amount to a deprivation of liberty or property. As County Defendants point out, possible future injury is not sufficient to

---

unfounded."). If a previously filed report is subsequently proved to be unfounded, the DOJ must be notified in writing of that fact and shall not retain the report. CAL. PENAL CODE § 11169(a).

establish an injury in fact. Accordingly, the Court concludes that Plaintiff has failed to allege that he suffered any loss of a recognizable property or liberty interest in connection with the reputational injury from having his name placed on the index sufficient to satisfy the "stigma-plus" test to state a defamation claim under § 1983.[6]

Fourth, Plaintiff alleges he has a *Monell* claim against CWS because it has not provided a means to "audit, monitor and cleanse" the "connected databases" for any copy of the child abuse investigative report and creates a "stigma-plus harm to Plaintiff derive[d] from technical propagation, misfortune/error, echoing, or sometimes even malicious retribution." [Doc. No. 61 at 25.] In keeping with its earlier orders, the Court continues to find this argument misplaced. As the Court previously cautioned Plaintiff, it is the Department of Justice, not the City of Carlsbad or the County of San Diego CWS, which is the entity responsible for controlling entries and removal of reports from the CACI. *See Planned Parenthood*, 181 Cal. App. 3d at 259-260 ("The Department of Justice retains the records in a statewide index . . . which is to be continually updated and 'shall not contain any reports that are determined to be unfounded. If a child protective agency subsequently determines that a report is 'unfounded', it must so inform the Department of Justice who shall remove the report from its files.") (citations omitted). Moreover, not only has Plaintiff failed to allege a violation of a constitutional right, absent from the SAC are any facts that identify a specific County policy, widespread practice, or pattern of violations by CWS employees which would lead to a valid *Monell* claim for failing to train employees.[7]

Finally, Plaintiff alleges a *Monell* claim against the City of Carlsbad in violation of § 1983 because it has a policy of not allowing criminal complaints to be filed against mandated reporters when such reporters have made and filed false child abuse reports with

---

[6] For the same reasons it declined to address the Carlsbad Defendants' qualified immunity claim, the Court also declines to address the County Defendants' claim of qualified immunity.

[7] As in its earlier order of dismissal the Court declines to consider the document labeled "Exhibit B" attached to Plaintiff's SAC as facts establishing the existence/absence of a policy. The Court has no way of verifying the source or accuracy of the information contained within the exhibit, nor of determining its significance to the alleged claims.

reckless disregard for the truth or falsity of the report in violation of CPC 11172(a). [Doc. No. 61 at 26-28.] Further, Plaintiff claims that on July 24, 2017, police officers Jakowski and Beason stated to him "that their duties as police officers included taking criminal reports, that their refusal to do so for CPC 11172(a) was a matter of department policy refusing to file criminal reports since Carlsbad police only take or relay **false Carlsbad police** reports, [sic], not false criminally false reports alleged in violation of CPC 11172(a)." [Doc. No. 61 at 27.]

However, the Court is unaware of any cases that have held that there is a constitutional right to the making of a police report. *See DeShaney v. Winnebago Cnty. Dept. of Social Services*, 489 U.S. 189, 1090 (there is no constitutionally protected right to have one's claim against another person investigated); *Linda R.S. v. Richard D.*, 410 U,S, 614, 619 (1973) (there is no federally protected right to compel the arrest of another.")[8];*White v. City of Toledo*, 217 F. Supp. 2d 838, 841-42 (N.D. Ohio 2002) ("No federal appellate court, including the Supreme Court . . . has recognized that there is a federally enforceable right for the victim [of a crime] to have criminal charges investigated at all.") Because Plaintiff has failed to show that he was deprived of a constitutional right, it follows that there can be no showing of a policy or practice on the part of the City of Carlsbad that amounted to a deliberate indifference to the constitutional violation. *See City of L.A. v. Heller*, 475 U.S. 796, 799 ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point.") (emphasis in original).

---

[8] *See also Harris v. Hardeman Cnty.*, 2013 WL 5740067, at *1, *4 (W.D. Tenn. Oct.22, 2013) ("[T]he Constitution is not violated by a police officer's failure to make a report...."); *Abella v. Simon*, 831 F. Supp. 2d 1316, 1341 (S.D.Fla.2011) vacated in part on other grounds, 482 F. App'x 522 (11th Cir.2012) ("[T]here is no right to have the police write a police report."), vacated in part on other grounds, 482 F. App'x 522 (11th Cir.2012); *White v. City of Toledo*, 217 F. Supp. 2d 838, 841-42 (N.D. Ohio 2002) ("No federal appellate court, including the Supreme Court . . . has recognized that there is a federally enforceable right for the victim [of a crime] to have criminal charges investigated at all.")

As a consequence of Plaintiff's failure to meet his burden of demonstrating the first element of any of the five § 1983 claims he seeks to bring, the Court does not find it necessary to perform any further inquiry.

**IV. Conclusion**

In sum, Plaintiff has failed to assert a constitutional violation of the Fourteenth Amendment. Additionally, Plaintiff fails to connect the City of Carlsbad or the County of San Diego CWS to the execution of a policy or custom necessary to establish a *Monell* claim. Thus, the Court finds that Plaintiff fails to state §1983 claims upon which relief can be granted. Accordingly, the Court **GRANTS** Defendants' motions to dismiss [Doc. Nos. 62 and 63] and **DISMISSES WITH PREJUDICE** Plaintiff's Second Amended Complaint. The Clerk of the Court shall **CLOSE** this case.

It is **SO ORDERED**.

Dated: September 29, 2017

_____
Hon. Cathy Ann Bencivengo
United States District Judge